## Case No. 8,429.

### In re LLOYD.

[15 N. B. R. 257; 5 Am. Law Rec. 679; 15 Alb. Law J. 293; 24 Pittsb. Leg. J. 113.] [2]

District Court, W. D. Pennsylvania. Feb. 21, 1877.

BANKRUPTCY—MEMBER OF PARTNERSHIP—QUORUM OF PETITIONING CREDITORS—PARTNERSHIP CREDITORS—SECURED CLAIM — BOND WITH SECURED SURETIES—REGISTER'S LIST OF CLAIMS.

1. In involuntary proceedings against a separate partner, creditors of the partnership must be counted in computing the legal quorum of petitioning creditors.

2. One-fourth of the creditors whose provable debts severally are over two hundred and fifty dollars, and in the aggregate are equal in amount to one-third of all the provable debts, are sufficient; or, in default of enough of this class signing the petition, one-fourth in number of all the

---

[1] [Reprinted by permission.]

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

[2] [Reprinted from 15 N. B. R. 257, by permission. 15 Alb. Law J. 293, contains only a partial report.]

creditors. whose debts, without regard to their several amounts, equal in the aggregate one-third of all the provable debts, must be joined.

[Cited in Re Blair, Case No. 1,481.]

3. The claim of a creditor on a bond. the sureties on which have been indemnified by mortgage, is not a secured claim and should be counted.

4. The register should return lists of the claims counted and rejected with his report.

In bankruptcy.

G. M. Reade and L. W. Hall, for petitioning creditors.

John M. Kennedy and S. S. Blair, for Lloyd.

KETCHUM, District Judge. In the matter of the exceptions to the report of Noah W. Shafer, Esq., register in bankruptcy, on the petition of creditors of William M. Lloyd, referred to said register by order of this court of March 16, 1876, to ascertain whether the petitioning creditors constitute one-fourth in number and one-third in amount of the debts provable against said Lloyd. On the 11th day of November, A. D. 1875, a petition was filed in this court by a large number of the creditors of Lloyd, praying his adjudication as bankrupt, and since that time, before the register, a supplemental petition for the same purpose. the two petitions representing two hundred and seven thousand five hundred and seventy-two dollars and ninety cents. On the 16th day of March, A. D. 1876, Lloyd filed in court a list of creditors, representing in all, debts of different descriptions, to the amount of one million and sixteen thousand four hundred and sixty-two dollars and twenty-six cents. Attached to his list is his affidavit, stating inter alia, that he, William M. Lloyd, did business at Altoona, Pa., in the name of William M. Lloyd & Co.; and at Ebensburg, Pa., in the name of Lloyd & Co.; and that he and C. H. Hamilton did business in New York in the name of Lloyd, Hamilton & Co.; and that he and D. T. Caldwell did business at Tyrone, Pa., in the name of Lloyd, Caldwell & Co.; and that he and George Huff and W. A. Watt did business at Latrobe, Pa., as Lloyd, Huff & Watt; and that he and George Huff and F. D. Kitchell did business at East Liverpool, Ohio, under the style of Huff & Co. The list of debts filed by Lloyd includes the liabilities of the different firms as aforesaid; also a number of secured claims and the individual indebtedness of Lloyd to the firms aforesaid.

It appears by the evidence accompanying the report, that Lloyd & Hamilton dissolved partnership and settled their partnership affairs between themselves. by Lloyd taking all the assets, and undertaking to pay all the debts, and also that Hamilton is insolvent. The register, in his computation, rejected all the liabilities of all the firms except William M. Lloyd & Co., at Altoona, and Lloyd & Co., at Ebensburg, respectively; also all the indebtedness of Lloyd to the different firms; also several claims as secured, and among them, a claim of the executors of Doctor Al-

exander Johnson. and several other claims for different reasons, and finds the amount of individual indebtedness of Lloyd provable to be five hundred and forty-three thousand two hundred and sixteen dollars and forty-three cents, and the amount to be counted. of which one-third is to represent or constitute the statutory quorum, to be four hundred and seventy-seven thousand nine hundred and forty-four dollars and fifty-seven cents—being the aggregate amount of the debts over two hundred and fifty dollars in amount. And that this aggregate amount is owned or held by four hundred and thirty-nine creditors, of whom one hundred and seventy-three join in the petition and hold one hundred and ninety-four thousand seven hundred and fifty-three dollars and seven cents of the said aggregate.

Thus: Total provable debts..... $543.216 43

Amount of debts of over two hundred and fifty dollars.........  477,944 57

Number of creditors whose debts exceed two hundred and fifty dollars each..................  439

Number joining in the petition of this class ..............  173

Amount of this class of debts held by them..................  194,753 07

And computes the quorum. by taking one-fourth of the creditors whose debts are each over two hundred and fifty dollars, and one-third of the aggregate of debts of over two hundred and fifty dollars each.

Thus: One-fourth of 489. say 110

One-third of $477,944.-57 ..............  $159,314 85

Making a surplus of petitioning creditors over a quorum of sixty-three creditors, whose debts are over two hundred and fifty dollars, and a surplus of value, in the aggregate of debts of over two hundred and fifty dollars, of thirty-five thousand four hundred and thirty-eight dollars and twenty-two cents. If this result is reached correctly, of course the quorum is made out. But Lloyd has excepted to it, and files no less than thirty exceptions thereto. I shall not consider them all.

With my view of the law, I think it necessary to consider only the first, second, fourth, fifth, sixth, seventh, eighth, ninth. thirteenth, sixteenth, twenty-first, twenty-fourth. twenty-fifth, twenty-sixth, twenty-eighth, and twenty-ninth exceptions.

First. It is excepted, that the register states that Lloyd admitted that he carried on business at Altoona and Ebensburg in his own name. If, as I understand him, he means that Lloyd carried on business alone as William Lloyd & Co., at Altoona. and alone as Lloyd & Co., at Ebensburg, the proof in evidence. Lloyd's acquiescence in his answer to the petition, and all through the proceedings, and his affidavit attached to the list of creditors filed by himself, fully establish it.

Second. It is excepted that the register finds that "only the creditors of William M. Lloyd have provable claims under the act of congress, the creditors of the firms of which

he was a partner being primarily creditors of the said firms." This and exception twenty-fourth are to the same point and are well taken. The claims against these firms should have been counted, except the claims of one firm against another; and where, by the act of the parties, they have been rendered unprovable. Creditors of a partnership have a right to prove their claims against the estate of a bankrupt partner, and are good petitioners under a separate commission whatever may be their fate as to the dividends, and should therefore be counted in making the quorum. Tucker v. Oxley, 5 Cranch [9 U. S.] 34; Barclay v. Phelps, 4 Metc. [Mass.] 397; Howe v. Lawrence, 9 Cush. 553; Harmon v. Clark, 13 Gray, 114; Agawam Bank v. Morris, 4 Cush. 99; Wilkinson v. Henderson, 1 Mylne & K. 582; Nelson v. Hill, 5 How. [46 U. S.] 127; Story, Partn. § 383; In re Frear [Case No. 5,074]; In re Melick [Id. 9,399]; U. S. v. Lewis [Id. 15,595]. The register very naturally fell into the error under this exception; for, with the impress on the mind of all the preceding bankrupt acts under which a single creditor, either firm or individual, had a right to take a commission without reference to any other creditor, it is difficult to divest one's self of the notion of the independence of the different classes of creditors, even under the arbitrary grouping of the quorum of the act of 1874 [18 Stat. 178]. At a day when all the partnership business of Great Britain was scarcely equal in importance to that of one London firm of the present time, the courts in bankruptcy permitted the firm creditor to take a separate commission, and to prove his debts against the separate estate. And in all succeeding bankruptcy, both in England and America, until our amended act of 1874, a single creditor, either firm or individual, could force the individual partner into bankruptcy. By our act, as it now stands, it is provided that, on the conditions therein prescribed, any person committing certain acts of bankruptcy shall be adjudged a bankrupt on the petition of one or more of his creditors, who shall constitute one-fourth thereof, at least, in number, and the aggregate of whose debts, provable under the act, amount to at least one-third of the debts so provable. If firm creditors are to be counted in the adjudication of a separate partner, then in many cases individual creditors, for want of sufficient numbers of their own class, will be dependent upon the firm creditors for assistance to make out the quorum; and in every case, where the firm assets and the other solvent partners may be sufficient to pay the firm liabilities, and also, on the other hand, in every case where the separate estate may be no more than sufficient to pay the separate liabilities, the firm creditors will have nothing to gain by the petition against the separate partners, and their indifference alone, the simple fact of their existence, will be sufficient to defeat the individual creditors.

It has always been held that secured creditors were not to be counted in the computation of the quorum, because. having a special security, they are not interested in the general estate; and it is unfair and unequal that they should be permitted to meddle in determining what shall be done with the estate. Neither they nor their debts are permitted to become an interfering element in the question of jurisdiction in a proceeding in which they may never have any interest. Upon what principle, in a separate adjudication, are firm creditors who, by reason of their inferior relative right, have no vote in the election of an assignee, nor voice in the direction of the proceeding after it is set on foot, I say, upon what principle are they given the power to prevent the proceeding altogether, and exclude the separate creditors with their primary rights from the remedy by involuntary bankruptcy? But it may be said that, because the separate partners are jointly and severally liable for the firm debts, the firm creditors have an interest in the adjudication of a separate partner, and should be heard in the proceeding, and moreover, if they undertake the separate adjudication, and their number is not sufficient, they are reciprocally dependent upon individual creditors for help to make out the quorum. All this is true, but by no means renders the case reciprocal or equal. They have an interest, but it is only secondary. It is the chance for dividends only in the balance of the insolvent partner's separate estate after all his separate creditors shall have been paid in full. To this extent only are they affected by their dependence on separate creditors, and even here the separate creditor's claim, being preferred, and the separate estate being his only resource, the separate creditor's interest is in sympathy with the firm creditor in aid of the adjudication. The separate creditor has a secondary interest in the management of the firm assets; he has a right to all the interest of a separate partner in the firm after the settlement of the firm debts, and the adjustment inter se; but no one will pretend that the separate creditor must be counted on a petition to adjudicate a firm. It would be considered monstrous that firm creditors with their primary rights should be dependent upon the will of separate secondary creditors for the adjudication of the firm. Why congress saw fit to pay this deference to firm creditors, and did not give to the separate creditors the power to constitute a quorum out of their own number independent of any other class, we cannot tell. It is clear enough from the provision itself, and the other amendments of the act of 1874 in connection with it, that it was adopted in restraint of involuntary bankruptcy, perhaps as a compromise between the old law and its repeal altogether. This restraint seems to have been the leading purpose, and its practical relative bearing upon different classes of creditors was probably

left to be settled by experience. However, such is the law. Our duty is to administer it as we find it. The law requires one-fourth of the creditors of a bankrupt, and one-third of the debts provable against him, to put him into bankruptcy, whether partners, firm, or separate individual debtor. Firm creditors are the creditors also of the partners, and firm debts are also debts of the partners, therefore one-fourth of the partner's creditors and one-third of the debts provable against him must be taken to mean indiscriminately one-fourth in number of all his creditors, both individual and firm creditors, and indiscriminately one-third of all his debts, both individual and firm debts. The language of the provision is plain, certain, and conclusive.

It may be remarked, however, that the result of the computation in this case is not dependent altogether upon the action or indifference of firm creditors; for while they have abstained from joining in the petition, numerous as they are, yet they are not alone in standing aloof, for there is not represented in the petition more than about one-third of the aggregate of the separate individual indebtedness of Lloyd, provable under the act, though amounting to a much larger aggregate than the provable firm debts.

Fourth. It is excepted that the register erred in finding that Doctor Alexander Johnson's claim ought not to be counted. It appears from the evidence that this claim is on a bond dated May 1st, 1875, signed by William M. Lloyd, with two sureties, Sylvester C. Baker and Thomas McCaulley, conditioned for the payment of the sum of fifty thousand dollars to Doctor Alexander Johnson, the balance returned by Lloyd as unpaid being forty-two thousand six hundred and ninety dollars and thirty-five cents. To indemnify the sureties on the bond, Lloyd executed to them a mortgage on certain real estate dated on the 8th day of May, A. D. 1875. This mortgage was not recorded till September 17th, 1875. The register rejects the claim of Doctor Alexander Johnson, as a secured claim and as affected by the preference supposed to have been given by Lloyd in indemnifying the sureties. This is clearly erroneous. The sureties in the bond are no such security as can render the claim in the bond a secured claim within the sense of the bankrupt law. The mortgage in indemnifying the sureties does not render the debt of the principal a secured debt within the meaning of the bankrupt act, and, as to any question of fraudulent preference in giving the mortgage, Alexander Johnson does not appear in any way a party to it, and therefore his debt cannot be tainted by it. This debt therefore should have been counted. This exception is sustained.

Fifth. That the register erred in counting out the claim of the Ginter heirs as secured. I think there was no error in this. The claim is for purchase-money for land on contract, the vendor still holding the legal title, and is a secured claim and not provable. Some evidence was taken before the register showing depreciation of the value of the land in order to show a balance provable; but the claimants were not parties to the proceeding and have not offered to release or to liquidate their security, and it cannot be assumed that they will part with the legal title and not have recourse to a recovery of the land for the balance of the purchase-money, so in its present status the claim is a secured claim. The amount of the claim as stated in the list was corrected and reduced by proof of payment; but, for the purpose of this adjudication, that is not material, and does not affect the question, as the claim was rejected by the register by subtracting its amount from the aggregate amount of the list of debts. This exception is overruled.

Sixth. As to the Jonathan Hamilton judgments, they are admitted to be liens upon real estate and secured. Therefore this exception is overruled.

Seventh. As to John Riley's claim, and, exception sixteenth, as to the claim of Huntley, Moon, Barker and Davis, both of their claims are so involved in the question of preference and security as to put the onus upon the claimants to purge them, which they have failed to do. These exceptions are therefore overruled.

Eighth. That the register erred in counting out the claim of Lloyd, Huff & Watt. This is a claim of a firm of which Lloyd is a partner, so that, as to Lloyd's interest in it, it is Lloyd's claim against himself in competition with his firm creditors, only the portion of it found on settlement of the partners inter se to be due to the other partners as individuals could be a provable debt. In its present form, it is not properly a debt of a creditor of Lloyd, and for the same reason no claim of one firm of which Lloyd is a partner, against another firm of which he is a partner, is a provable debt against him. By the reference of the petition to the register he has power and it is his duty to ascertain the amount of provable debts, and under the proof before him to arrive at the real balance against the debtor, the petitioning creditors sustaining the affirmative of allegation and denial. But he is not bound to consider claims that are not distinctly liabilities of the debtor, or that may not be shown to be such without resort to the aid of extraneous proceedings at law or in equity to ascertain the interest of the creditors. This exception is therefore overruled.

Ninth. The register erred in excluding the claim of James Loudon for five thousand three hundred and eighty-three dollars and thirty-three cents. The only reason assigned for excluding this claim is, that James Loudon is a trustee under the voluntary assignment of Lloyd for the benefit of his creditors. This, without showing some fraud connected with it, is not a sufficient reason. In re Horton

[Case No. 6,707]. This exception is sustained.

Thirteenth. That the register erred in finding that any of the claims on the debtors' list should not be counted, for the reason that they are too small. There is no evidence that the register, for the reason given, found that any claim should not be counted which ought to be considered a provable claim in bankruptcy. This exception is therefore overruled.

Twenty-First. As to the Christy claim, it appeared that this claim was got into a judgment by an award of arbitrators, filed September 28th, 1875, ten days after Lloyd had made a voluntary assignment for the benefit of his creditors, and from all that appears it is prima facie no lien, and should be counted. As to the Richie claim, there is no evidence of the fact, though it seems to be admitted that it is an award of arbitration, filed on some day (in blank) in September, 1875, and admitted like the Christy claim to have been entered of record after Lloyd's voluntary assignment. There is no evidence that either of these claims is secured. They are therefore provable, and the exception is overruled.

Twenty-Fifth. That the register erred in finding that the petitioning creditors constituted one-fourth in number of Lloyd's creditor's, and the aggregate of their debts amount to at least one-third of the debts provable against Lloyd.

Twenty-Sixth. That the register erred in not finding that the petitioning creditors did not constitute the statutory quorum required to join in the petition for the adjudication of the bankruptcy of the said Lloyd. These two exceptions refer to the same thing, the computation of the legal quorum.

The register, in computing the statutory quorum, adopted the rule laid down in Re Hymes [Case No. 6,986], that creditors whose debts do not exceed two hundred and fifty dollars are to be excluded in the computation as to the amount as well as to the number of creditors, and taking from the petition one-fourth of Lloyd's separate creditors, whose claims are above two hundred and fifty dollars each, and whose aggregate claims amount to one-third of the aggregate of the debts of over two hundred and fifty dollars, he adopts this as the statutory quorum. I think he is wrong in this. The only aggregate for his purpose is all the provable debts, without reference to their respective amounts. The statute says, the debtor shall be adjudicated a bankrupt on the petition of one or more of his creditors who shall constitute one-fourth in number and the aggregate of whose debts, provable under the act, amount to at least one-third of the debts so provable. It also contains this qualification: "And in computing the number of creditors aforesaid who shall join in such petition, creditors whose respective debts do not exceed the sum of two hundred and fifty dollars shall not be reckoned. But if there be no creditors whose debts ex-

ceed the sum of two hundred and fifty dollars, or if the requisite number of creditors holding debts exceeding two hundred and fifty dollars fail to sign the petition, the creditors having debts of a less amount shall be reckoned for the purpose aforesaid." For what purpose aforesaid? Certainly for the purpose of computing the number of creditors aforesaid who shall join in the petition. But there are no creditors aforesaid in question but those holding one-third in amount of the debts provable, and the provability of a debt under the act does not depend upon its size or amount. Therefore whatever selection of creditors there may be in constituting the quorum in number, whether holding debts above or below two hundred and fifty dollars, the one-third in amount held by them must be one-third in amount of the debts provable against the bankrupt, be they large or small. Under the act of 1867 [14 Stat. 517], any creditor, or any number of creditors together, holding debts of the amount of two hundred and fifty dollars, could force a man into bankruptcy. But, under the present law, it is required that at least one-fourth of the creditors and at least one-third in amount of the debts shall be consulted, and shall take the responsibility of the act, before the interests of the debtor and of his creditors shall be committed by compulsion to the fortunes of bankruptcy. The two hundred and fifty dollars qualification does not vary the aggregate of debts which forms the basis of the computation; but does vary the mode of computation, so that, according to the facts of the case, one or the other of two modes may be adopted in computing the quorum: First, by joining in the petition at least one-fourth of the creditors whose provable debts severally are over two hundred and fifty dollars, and in the aggregate are equal in amount to one-third of all the debts provable under the act; or, secondly, in default of enough of these joining in the petition, then by joining creditors, at least one-fourth in number of all the creditors whose debts, without regard to their several amounts, are equal in the aggregate to one-third of the aggregate amount of all the provable debts of the bankrupt. This alternative is prescribed, and by one or the other mode in every case the one-fourth of the creditors, and the one-third in amount of the debts provable under the act, can be computed. The resort to two different aggregates, as in the Hymes Case [supra], I think is neither required by the language of the act, nor necessary to effectuate its purposes; but, on the contrary, in every case where it is applied, it defeats one of the principal purposes of amending the act of 1867. Why should there be any distinction as to the merit of the debts held by large or small creditors? Why should one class be required to hold one-third of all the debts, and another class only one-third of all the debts of over two hundred and fifty dollars in amount?

So far as I can discover. whenever the question has been raised, since the decision In re Hymes. before referred to, the courts have taken the view I have adopted. In re Hadley [Case No. 5,894]; In re Bergeron [Id. 1,342]; In re Currier [Id. 3,492]; In re Woodford [Id. 17,972].

Twenty-eighth and twenty-ninth exceptions, that the register erred in not returning lists of the claims counted. and of those rejected, are sustained. As a matter of practical convenience for referring to, and as explanatory of the report, it should always be done. The list of creditors, filed by Lloyd, March 16, 1876, and corrected by list filed February 17, 1877, shows liabilities of the different firms, for which he alleges he was at that date liable as a partner, as follows:

| | |
|---|---|
| Lloyd, Hamilton & Co. of New York .............................. | $ 98,347 45 |
| Lloyd, Caldwell & Co., of Tyrone, Pa. ................................ | 149 912 78 |
| Huff & Co., East Liverpool, Ohio.. | 21,355 05 |
| Lloyd, Huff & Watt, Latrobe, Pa., as per corrected list............ | 70,191 24 |
| Total ........:................ | $339,806 52 |

Amounting in the aggregate to three hundred and thirty-nine thousand eight hundred and six dollars and fifty-two cents. From this amount is to be deducted amounts due from Lloyd, Hamilton & Co. to Lloyd, Huff & Watt, and Lloyd. Huff, Happer & Co., and to Huff & Co.. as follows (released to Lloyd, Hamilton & Co., and assumed by Lloyd):

| | |
|---|---|
| Lloyd, Hamilton & Co., to Lloyd. Huff, Happer & Co., at Irwins. Pa. ............................ | $13.222 07 |
| Lloyd, Hamilton & Co. to Lloyd, Huff & Watt, at Latrobe. Pa..... | 15,087 01 |
| Lloyd, Hamilton & Co., to East Liverpool Deposit Bank, admitted by Lloyd's counsel to be misstated, for Huff & Co.................... | 8,117 37 |
| Total ..................... | $36,426 45 |

Making the total amount of firm indebtedness to be deducted, thirty-six thousand four hundred and twenty-six dollars and forty-five cents. and leaving the aggregate amount of firm debts provable three hundred and three thousand and three hundred and eighty dollars and seven cents. Total provable firm debts, $303,380.07.

The amount of Lloyd's individual separate debts provable are found by taking the aggregate, reported by the register, with the changes I have made under the exceptions, as follows:

| | |
|---|---|
| Total provable debts reported by the register................... | $543,216 43 |
| Add claim of Alexander Johnson's executors ........ | 42,690 35 |
| "    "    James Loudon ..... | 5,383 33 |
| | $591,290 11 |

On Lloyd's additional list improperly rejected by the register, and to be added. are the following claims:

| | | |
|---|---|---|
| John Miller, trustee.............. | $ | 592 48 |
| Beck, Happer & Co.. Irwins, Pa.... | | 709 01 |
| John A. Anderson (interest to be added) ..................... | | 71 19 |
| Total individual provable debts | | $592,662 79 |
| Add total firm provable debts.. | | 303,380 07 |
| Total provable debts....... | | $896,042 86 |

So we have a total provable indebtedness. of eight hundred and ninety-six thousand and forty-two dollars and eighty-six cents. One-third of this amount is required for the quorum, being $298,680.95. The amount represented in the creditors' petition and supplemental petition of provable debts, is two: hundred and seven thousand five .hundred and seventy-two dollars and ninety cents. ($207,572.90), and is short of the amount required by the law by the sum of ninety-one thousand one hundred and eight dollars and five cents ($91,108.05). This being the case, it is not worth while to compute the number of petitioning creditors. The legal quorum, therefore, is not made out by the petitioning creditors, and the report of the register, finding a quorum. is overruled. This computation does not include any claims or petitions filed in court since the hearing before the register. Such claims, if any, are to be considered in the proceeding to amend the petition by way of additions. The creditors' petition is continued for ten days from the filing hereof for amendment.

[NOTE. From the petition, amended by way of additions. the case was subsequently heard. Other exceptions. not disposed of in the opinion above. were overruled. and a decree entered adjudging that a legal quorum of the creditors had joined in the petition. Case No. 8,430. From this decision a petition for review was filed in the circuit court by the bankrupt. which dismissed the petition upon the ground that the supervisory power of the circuit court does not extend to a decision of the district court upon the question of quorum. Case No. 8,431. The district court overruled the register's allowance to counsel for the petitioning creditors for fees. upon the ground that, although the service was meritorious, yet it was not in the power of the court to grant fees. 7 Fed. 459. An order confirming the sale by the assignee of certain of the bankrupt's real estate was rescinded in 11 Fed. 586. The bankrupt was a member of the firm of Lloyd. Hamilton & Co. The register admitted proof of debts of the creditors of the firm against the estate of the bankrupt. District Judge Acheson sustained the register's report upon this point. upon the ground that, there being no joint estate, the firm creditors had a right to share in the separate estate. 22 Fed. 88. The bankrupt was a member also of the firm of Lloyd. Huff & Watt. The firm was also bankrupt. and their assignee tendered proofs of debt against the estate of the bankrupt. These the register allowed. but the court (District Judge Acheson) sustained exceptions to the report, and disallowed the proofs. Id. 90.]